**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONTRELL ALFORD | ) | CASE NO. |
| 7685 Starcliff Avenue NW | ) | |
| North Canton, Ohio 44720 | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| FA OH HND, LLC D/B/A FOUNDATION | ) | |
| HONDA | ) | **JURY DEMAND ENDORSED** |
| 2953 Mayfield Road | ) | **HEREIN** |
| Cleveland Heights, Ohio 44118 | ) | |
| | ) | |
| **Serve Also:** | ) | |
| FA OH HND, LLC D/B/A | ) | |
| FOUNDATION HONDA | ) | |
| c/o CORPORATE CREATIONS | ) | |
| NETWORK, INC. | ) | |
| Statutory Agent | ) | |
| 119 E. Court Street | ) | |
| Cincinnati, Ohio 45202 | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Contrell Alford, by and through his undersigned counsel, as his Complaint against

Defendant Fa Oh Hnd, LLC d/b/a Foundation Honda ("Honda"), states and avers the following:

**PARTIES**

1. Plaintiff Contrell Alford is a natural person and resident of the City of North Canton, County
   of Stark, State of Ohio.

2. Defendant Honda is a foreign limited liability company organized under the laws of the State
   of Delaware, with a principal place of business located at 2953 Mayfield Road, Cleveland
   Heights, Ohio 44118.

**JURISDICTION & VENUE**

3.  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Alford is alleging federal law claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C § 2601 *et seq.*; and Families First Coronavirus Response Act ("FFCRA"), 29 U.S.C. § 2620 *et seq.*

4.  This Court has personal jurisdiction over Honda pursuant to Ohio Revised Code Section 2307.382(A)(1), as Honda has and continues to transact business in the State of Ohio.

5.  All material events alleged in this Complaint occurred in Cuyahoga County, Ohio.

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), as a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this judicial district.

7.  Within 300 days of the conduct alleged below, Alford filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Charge No. 532-2021-00340, against Honda.

8.  On or about June 1, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Alford regarding the Charge No. 532-2021-00340.

9.  Alford received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

10. Alford filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11. Alford has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## **FACTS**

12. Honda owns and operates a car dealership located at 2953 Mayfield Road, Cleveland Heights, Ohio 44118.

13. Alford is a former employee of Honda.

14. Alford was hired by Honda in or around April 2018 as a Finance Manager.

15. Alford was promoted by Honda to Finance Director on or about March 1, 2020.

16. Alford is African American.

17. On or about September 1, 2020, Alford herniated a disc in his back.

18. On or about September 9, 2020, Alford informed Delano Palmer, Honda's General Manager, that he had to attend a doctor's appointment to treat his back injury, but that he would return to work once his appointment concluded.

19. At all times relevant herein, Palmer acted as Alford's supervisor, with the authority to take tangible employment actions against Alford, including disciplining, suspending and/or terminating Alford.

20. While at his doctor's appointment on or about September 9, 2020, Alford received a voicemail message from Palmer.

21. In the message, Palmer called Alford a "monkey" and reprimanded him for leaving work ("Palmer's Racist Remark").

22. Alford was offended by Palmer's Racist Remark.

23. A reasonable person in Alford's position would have been offended by Palmer's Racist Remark.

24. Calling an African American a "monkey" constitutes an insult based on race.

25. Calling an African American a "monkey" constitutes racial discrimination.

26. At all times relevant herein, Chuck Kramer was Honda's Chief Operating Officer.

27. At all times relevant herein, Kramer acted as Alford's supervisor, with the authority to take tangible employment actions against Alford, including disciplining, suspending and/or terminating Alford.

28. Alford did not report Palmer's Racist Remark to Kramer because Kramer, on numerous occasions during Alford's employment with Honda, had referred to Alford as "boy" ("Kramer's Racist Remarks").

29. Alford was offended by Kramer's Racist Remarks.

30. A reasonable person in Alford's position would have been offended by Kramer's Racist Remarks.

31. Referring to an African American as "boy" constitutes an insult based on race.

32. Referring to an African American as "boy" constitutes racial discrimination.

33. On or about September 10, 2020, Alford complained to Palmer about Palmer's Racist Remark ("Alford's Discrimination Complaint").

34. Upon information and belief, Honda has a policy against race discrimination in the workplace ("Discrimination Policy").

35. An employee referring to an African American coworker as a "monkey" violates Honda's Discrimination Policy.

36. Alternatively, Honda permits employees to make comments similar to Palmer's Racist Remark to other African American coworkers.

37. Palmer's Racist Remark constituted race discrimination.

38. Upon information and belief, Honda has a policy to investigate complaints of harassment and/or discrimination in the workplace ("Investigation Policy").

39. Pursuant to the Investigation Policy, an investigation should include interviewing the complainant.

40. Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the complaint.

41. Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the reported discrimination.

42. Pursuant to the Investigation Policy, an investigation should include interviewing witnesses to the reported discrimination.

43. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the complainant.

44. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the complaint.

45. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the reported discrimination.

46. In response to Alford's Discrimination Complaint, Honda did not interview Alford.

47. In response to Alford's Discrimination Complaint, Honda did not interview Palmer.

48. In response to Alford's Discrimination Complaint, Honda did not interview witnesses.

49. In response to Alford's Discrimination Complaint, Honda did not get a written statement from Alford.

50. In response to Alford's Discrimination Complaint, Honda did not get a written statement from Palmer.

51. In response to Alford's Discrimination Complaint, Honda did not get a written statement from witnesses.

52. Honda did not investigate Alford's Discrimination Complaint.

53. Honda did not discipline Palmer in connection with Alford's Discrimination Complaint.

54. By not disciplining Palmer in connection with Alford's Discrimination Complaint, Honda ratified Palmer's conduct.

55. Ratifying Palmer's Racist Remark was an adverse action.

56. Ratifying Palmer's Racist Remark was an adverse employment action.

57. Honda ignored Alford's Discrimination Complaint.

58. After Alford's Discrimination Complaint, Honda began taking retaliatory action against Alford.

59. On or about November 6, 2020, Alford complained to Engle that a portion of his earned monthly commission was being withheld unlawfully by Honda.

60. Upon information and belief, Honda withheld a portion of Alford's earned monthly commission to pay the wages of another Honda employee.

61. On or about November 9, 2020, Alford again discovered that a portion of his earned monthly commission for a separate pay period was being unlawfully withheld by Honda.

62. Honda never compensated Alford for the monthly commission Alford earned at any time after November 9, 2020.

63. Honda withheld Alford's earned monthly commission in retaliation against Alford for making Alford's Discrimination Complaint.

64. On or about September 26, 2020, Alford's son tested positive for Covid-19.

65. After learning of his son's positive Covid-19 test, on or about September 26, 2020, Alford contacted Palmer and Engle to inform them that he had been exposed to Covid-19.

66. After learning of his son's positive Covid-19 test, on or about September 26, 2020, Alford informed Palmer and Engle that he had to care for his ill son and would not be able to come to work.

67. After learning of his son's positive Covid-19 test, on or about September 26, 2020, Alford further informed Palmer and Engle that he would have to care for his four other children, given he was unable to make emergency childcare arrangements.

68. In response, Palmer demanded that Alford appear for work on or about September 26, 2020.

69. On or about September 29, 2020, Alford again contacted Palmer and Engle, informing them that he would not be able to come to work due to his childcare obligations.

70. In response, Palmer again demanded that Alford appear for work on or about September 29, 2020, and bring his children so someone at Honda could watch them during Alford's work shift.

71. As of September 2020, Honda was a covered employer under the FMLA.

72. As of September 2020, Honda was a covered employer under the FFCRA.

73. As of September 2020, Alford had worked for Honda for at least 12 months.

74. As of September 2020, Alford had at least 1,250 hours of service for Honda during the previous 12 months.

75. As of September 2020, Alford qualified for FMLA and/or FFCRA leave, as related to his childcare obligations.

76. Upon information and belief, Honda allowed similarly situated employees, who did not have childcare obligations, to use FMLA and/or FFCRA-protected leave subsequent to the onset of the Covid-19 pandemic.

77. Honda was aware of Alford's childcare issues stemming from the Covid-19 pandemic.

78. Honda had sufficient information that Alford required time off work due to his childcare issues.

79. Honda never issued Alford a Notice of Eligibility letter.

80. Honda did not advise Alford of his ability to apply for and utilize FMLA and/or FFCRA leave after becoming aware of his childcare issues.

81. Honda failed to advise Alford of his rights to utilize FMLA and/or FFCRA leave.

82. In failing to notify Alford of his rights pursuant to the FMLA and/or FFCRA, Honda interfered with Alford's rights under the FMLA and/or FFCRA.

83. Alford was eligible for FMLA and/or FFCRA leave, due to his childcare obligations.

84. On or about October 1, 2020, Alford was informed that he had tested positive for Covid-19.

85. After learning he had tested positive for Covid-19, on or about October 1, 2020, Alford advised Palmer.

86. In response, Palmer demanded that Alford complete his work shift on October 1, 2020 before he would be able to leave.

87. After October 1, 2020, Alford quarantined until on or about October 12, 2020, when he returned to work at Honda.

88. On or about October 31, 2020, Alford learned that his children's grandfather had passed away and that a funeral had been scheduled for November 7, 2020.

89. After learning that his children's grandfather had passed away, Alford informed Palmer and requested November 7, 2020 off from work, to attend the funeral.

90. Palmer approved Alford's time-off request for November 7, 2020 and Alford attended the funeral that same day.

91. On or about November 9, 2020, Palmer held a meeting with Alford in which he advised Alford that his employment with Honda was being terminated.

92. Palmer told Alford the reason for his termination was failing to come to work on November 7, 2020.

93. Upon information and belief, Honda has a progressive disciplinary policy,

94. Upon information and belief, Honda's progressive disciplinary policy calls for escalating levels of discipline beginning with a verbal warning, followed by a written warning, suspension, and ultimately leading up to termination.

95. Alford did not receive a verbal warning.

96. Alford did not receive a written warning.

97. Alford did not receive a final written warning.

98. Alford did not receive a suspension.

99. By terminating Alford as the first form of discipline, Honda violated its own progressive disciplinary policy.

100. Honda's purported reason for Alford's termination was pretext for race discrimination.

101. Honda's purported reason for Alford's termination was retaliation against Alford for submitting Alford's Discrimination Complaint.

102. Honda did not proffer a legitimate, non-discriminatory reason for terminating Alford.

103. As a direct and proximate result of being wrongfully terminated by Honda, Alford has suffered emotional distress, anxiety, and depression.

104. The above facts demonstrate that Honda engaged in a pattern and practice of race discrimination.

105. The above facts demonstrate that Honda engaged in a pattern and practice of unlawful retaliation.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq.*

106. Alford restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

107. Alford is a member of a statutorily protected class based on his race under 42 U.S.C. § 2000e *et seq*.

108. Honda treated Alford differently than other similarly situated employees based on his race.

109. Honda discriminated against Alford on the basis of his race throughout his employment with the company.

110. Honda terminated Alford's employment without just cause.

111. Honda terminated Alford's employment based on his race.

112. Honda's discrimination against Alford, based on his race, violates 42 U.S.C. § 2000e *et seq*.

113. As a result of Honda's discrimination against Alford, in violation of 42 U.S.C. § 2000e *et seq*, Alford has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

114. In its discriminatory actions as alleged above, Honda acted with malice or reckless indifference to Alford's rights, thereby entitling Alford to an award of punitive damages.

115. To remedy the violations of Alford's rights, as secured by 42 U.S.C. § 2000e *et seq*, Alford requests that the Court award him the relief demanded below.

**COUNT II: RETALIATORY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-3 *et seq.***

116. Alford restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

117. After Alford's Discrimination Complaint, Honda withheld money and monthly commission earned by Alford.

118. Honda's actions were retaliatory in nature based on Alford's opposition to unlawful discriminatory conduct.

119. Honda's retaliatory conduct toward Alford violated 42 U.S.C. § 2000e-3 *et seq*.

120. As a result of Honda's retaliation against Alford in violation of 42 U.S.C. § 2000e-3 *et seq.*, Alford has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Alford to injunctive, equitable and/or compensatory monetary relief.

121. As a result of Honda's discrimination against Alford in violation of 42 U.S.C. § 2000e-3 *et seq*., Alford has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

122. In its discriminatory actions as alleged above, Honda has acted with malice or reckless indifference to Alford's rights, thereby entitling Alford to an award of punitive damages.

123. To remedy the violations of Alford's rights, as secured by 42 U.S.C. § 2000e-3 *et seq*., Alford requests that the Court award him the relief demanded below.

### COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

124. Alford restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

125. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

126. Honda is a covered employer under the FMLA.

127. During his employment with Honda, Alford qualified for FMLA leave.

128. Honda failed to properly advise Alford of his rights under the FMLA.

129. Honda unlawfully interfered with Alford's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and Section 825.220 of the FMLA regulations.

130. Honda's act of terminating Alford's employment when he was eligible for FMLA leave violated and interfered with Alford's FMLA rights.

131. As a direct and proximate result of Honda's conduct, Alford is entitled to all damages provided for under 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## COUNT IV: UNLAWFUL INTERFERENCE WITH FFCRA RIGHTS

132. Alford restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

133. The Department of Labor's temporary rule to implement the FFCRA can be found at 85 C.F.R. 19326-01.

134. During his employment with Honda, Alford was eligible for FFCRA leave.

135. Honda unlawfully interfered with Alford's exercise of his rights under the FFCRA.

136. Honda's refusal to provide Alford with information pertaining to FFCRA leave violated and interfered with his FFCRA rights.

137. As a direct and proximate result of Honda's conduct, Alford has suffered and will continue to suffer damages.

138. As a direct and proximate result of Honda's conduct, Alford is entitled to all damages provided for under the FFCRA.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Contrell Alford demands from Honda the following:

(a) Issue an order requiring Honda to restore Alford to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Honda of compensatory and monetary damages to compensate Alford for compensatory damages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Honda in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Alford's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.


Respectfully submitted,


/s/ *Kevin A. Buryanek*
Kevin A. Buryanek (0099300)
Daniel S. Dubow (0095530)
**SPITZ, THE EMPLOYEE'S FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
kevin.buryanek@spitzlawfirm.com
daniel.dubow@spitzlawfirm.com

*Attorneys For Plaintiff Contrell Alford*

## <u>JURY DEMAND</u>

Plaintiff Contrell Alford demands a trial by jury by the maximum number of jurors permitted.


/s/ *Kevin A. Buryanek*

Kevin A. Buryanek (0099300)
Daniel S. Dubow (0095530)
**SPITZ, THE EMPLOYEE'S FIRM**